UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN MATTHEW DALY,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

No. 2:17-cv-02519 AC

**ORDER**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on November 20, 2014. Administrative Record ("AR") 16.[2] The disability onset date was alleged to be January 20, 2010. Id. The alleged onset date was later

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] The AR is electronically filed at ECF Nos. 12-3 to 12-13 (AR 1 to AR 582).

1

amended to October 1, 2013.  AR 16.  The application was disapproved initially and on reconsideration.  Id.  On November 8, 2016, ALJ Curtis Renoe presided over the hearing on plaintiff's challenge to the disapprovals.  AR 34 – 107 (transcript).  Plaintiff, who appeared with his representative Joseph Olive, was present at the hearing.  AR 36.  Bonnie Drumright, a Vocational Expert ("VE"), also testified.  Id.

On February 10, 2017, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 16-29 (decision).  On September 29, 2017, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-3.

Plaintiff filed this action on November 30, 2017.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 8, 9.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 18 (plaintiff's summary judgment motion), 19 (Commissioner's cross-motion for summary judgment), 20 (plaintiff's reply).

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1973, and accordingly was, at age 37, a younger person under the regulations, when he filed her application.[3]  AR 44, 204.  Plaintiff has at least a high school education, and can communicate in English.  AR 51, 211.  Plaintiff worked as an account manager, bartender, car salesperson, insurance sales and paper deliverer.  AR 122-23.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'"  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

---
[3] See 20 C.F.R. § 404.1563(c) ("younger person").

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

4

## V. THE ALJ's DECISION

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 30, 2017.

2. [Step 1] The claimant has not engaged in substantial gainful activity since October 1, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Step 2] The claimant has the following severe impairments: multiple sclerosis, cognitive issues associated with multiple sclerosis, affective disorder and anxiety (20 CFR 404.1520(c)).

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [Residual Functional Capacity ("RFC")] [Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: the claimant can lift and/or carry twenty pounds occasionally, ten pounds frequently; the claimant can sit, stand or walk for six hours out of an eight-hour workday with normal breaks; the claimant can frequently climb ramps and stairs or balance; the claimant can occasionally climb ladders, ropes or scaffolds, stoop, kneel, crouch or crawl; the claimant is limited to simple, routine, repetitive tasks; the claimant is limited to making simple work related decisions; the claimant can frequently interact with supervisors; the claimant can occasionally interact with coworkers and the public; the claimant is limited to tolerating few changes in a routine work setting defined as no rapid or extensive changes to work routines or procedures without additional supervisor supervision and interactions to explain such changes.

6. [Step 5] The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in 1973] and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2013, through the date of this decision (20 CFR 404.1520(f)).

AR 16-29. As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 29.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by failing to properly evaluate medical opinions, in finding plaintiff not credible, and in rejecting lay witness testimony. ECF No. 18 at 12-20. Plaintiff requests that the matter be remanded to the Commissioner for payment of benefits, or in the alternative, for further proceedings with the appropriate corrective instructions. ECF No. 18 at 21.

### A. The ALJ Did Not Err in Evaluating Medical Opinion Evidence

#### a. The Medical Opinion Evidence

The record before the ALJ included medical opinion evidence regarding the extent and effects of plaintiff's physical and mental impairments. Regarding physical impairments, the ALJ considered the opinions of plaintiff's treating neurologist, William Au, M.D. (AR 355-358, 450-452); plaintiff's treating physician, Anne Priest, D.O. (AR 453-458); and non-examining agency medical consultants P.A. Talcherkar, M.D. (AR 109-125) and B. Williams, M.D. (AR 127-144). Regarding plaintiff's mental impairments, the ALJ considered the opinions of a consultative examining psychologist, Amy Loarie, Psy. D. (AR 453-458); and non-examining agency medical consultants M. Candice Burger, Ph.D. (AR 109-125) and J. Tendler, M.D. (AR 133-135, 138-140).

Dr. Au complete a Neurological form which stated that plaintiff experienced cognitive problems, difficulty with short-term memory and concentration, difficulty following directions, and variable weakness and fatigue due to his multiple sclerosis. AR 358. Dr. Au also completed a Medical Source Statement-Physical. AR 451-452. These forms ask the provider to quantify the

patient's ability to perform various work-related activities, by selecting the most appropriate level of ability from among several options. Dr. Au did not select any of the options provided for the specified activities, but wrote "variable" in response to each question, often with explanations. For example, Dr. Au opined that on some days plaintiff could lift up to 100 pounds, but on other days only 5 pounds. AR 451. Dr. Priest also completed a Medical Source Statement, and also wrote in "variable" without electing among options. AR 460. She opined that Plaintiff could "lift and/or carry five to 100 pounds, depending on the temperature and symptoms." Id. Dr. Priest found that plaintiff could not stand or walk for more than one hour and could occasionally climb, balance, stoop, kneel, crouch or crawl. AR 460-61. The ALJ gave "little weight" to the opinions of these two treating doctors. AR 26. He gave "great weight" to the opinions of the agency medical consultants, who had found less restrictive limitations (see AR 118-119, 137-138), and adopted those limitations in his formulation of the RFC. AR 26.

Regarding mental limitations, consultative examining psychologist Dr. Loarie diagnosed plaintiff with generalized anxiety disorder and personality disorder not otherwise specified. AR 457. She conducted a mental status examination which revealed a cooperative and somewhat confrontational attitude, normal motor activity, good eye contact, pressured and rapid speech, and average intelligence. AR 456. Dr. Loarie found plaintiff had normal concertation, an adequate fund of knowledge, impaired memory, intact judgment, good insight, anxious and irritable mood, intense affect, intact and very tangential thought process and preoccupied thought content. AR 456-57. She opined that plaintiff had "mild" limitation with regard to following simple instructions; "moderate" limitation with regard to following complex/detailed instructions, and maintaining pace and persistence in performance of simple tasks; and "marked" limitation in maintaining pace and persistence in performance of complex tasks, adapting to changes in routine, withstanding the stress of a typical work day, interacting appropriately with others, and adapting to workplace hazards or stressors. AR 457. The agency medical consultants assessed less restrictive limitations. AR 119-121 (Dr. Burger), 138-140 (Dr. Tendler). The ALJ assigned "great weight" to the opinions of the agency consultants, AR 26, and "little weight" to the opinion of Dr. Loarie, AR 27.

b. <u>Principals Governing the ALJ's Consideration of Medical Opinion Evidence</u>

The Ninth Circuit distinguishes "among the opinions of three types of physicians: (1) those who treat the claimant (treating physician); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995), <u>as amended</u> (Apr. 9, 1996). Accordingly, "the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)).

If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence. <u>Orn</u>, 495 F.3d at 632 (quoting <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)). If the treating physician's opinion is contradicted by another doctor, it may not be rejected unless the ALJ provides specific and legitimate reasons supported by substantial evidence. <u>Id.</u> (quoting <u>Reddick</u>, 157 F.3d at 725). The same standard applies where an examining physician's opinion is contradicted by a non-examining physician. <u>Moore v. Comm'r</u>, 278 F.3d 920, 924 (9th Cir. 2002). An ALJ satisfies the requirement for "substantial evidence" by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting <u>Reddick</u>, 157 F.3d at 725).

In general, "conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987) (citation omitted).

i. <u>The ALJ's Evaluation of Treating Physician Opinions</u>

The ALJ rejected the opinions of Dr. Au, plaintiff's treating neurologist, and Dr. Priest, plaintiff's treating physician, on the following grounds:

////

> The undersigned has given little weight to the opinion of Dr. Au and Dr. Priest Exs. 3F, 5F). Dr. Au and Dr. Priest indicated the claimant's functional limitations were variable and [they] provided a very wide range of functional ability. These opinions are inconsistent with what information a residual functional capacity opinion is supposed to provide, including the highest amount [of] functional activity a person can perform. Accordingly, Dr. Au's and Dr. Priest's opinions are given little weight because [they are] not an accurate representation of the claimant's functional ability. The undersigned has considered the claimant's treatment records as a whole and finds the claimant's records support a finding that the claimant can perform a less than full range of light work.

AR 26.

This assessment immediately followed the ALJ's conclusion that the opinions of the agency medical consultants were entitled to "great weight," because they were consistent with plaintiff's medical treatment records. Id. Because the opinions of the treating physicians were contradicted by the opinions of the agency consultants, the ALJ was required to articulate specific and legitimate reasons supported by substantial evidence for discounting the opinions of Dr. Au and Dr. Priest. Orn, 495 F.3d at 632.

Inconsistency with treatment records constitutes a specific and legitimate reason for discounting the opinions of treating physicians. See Magallanes v. Bowen, 881 F.2d 747, 751–55 (9th Cir. 1989). Here, Dr. Priest's own treatment notes indicated plaintiff's multiple sclerosis was stable, he was sleeping well, and his physical examination was normal. AR 468, 497-98, 506. On September 29, 2015, plaintiff had a nonfocal neuro exam and Dr. Priest noted plaintiff had a history of being noncompliant with his prescription of Copaxone injections. AR 499. Moreover, an MRI of plaintiff's brain on October 13, 2015, revealed no significant change in the number and extent of foci of white matter T2 hyperintensity in the supratenporal brain and brainstem. AR 572. The ALJ thoroughly reviewed Dr. Priest's treatment history, AR 24-25, which included substantial evidence of normal findings and symptom stability. Accordingly, this was a permissible basis for giving little weight to the opinions of the treating doctors.

The ALJ was also permitted to discount both treating physicians' Medical Source Statements on grounds they failed to provide the requested information. The court understands the ALJ's reference to "inconsisten[cy] with what information a residual functional capacity

opinion is supposed to provide," AR 26, as a reference to the fact that neither doctor ranked plaintiff's functional abilities in the ways called for by the form. While the court well understands that multiple sclerosis is a disease with symptoms that can and do fluctuate, the Medical Source Statements at issue provided no indication how frequently plaintiff would be able to perform at his highest capacity and how frequently he could be expected to perform only at his most limited capacity. For this reason, the treating physicians' "opinions" did not in fact opine on the matter of greatest significance to the disability determination: the "highest amount [of] functional activity [plaintiff] can perform." AR 26.

The Ninth Circuit has held that an ALJ may reject "check-off reports" that do not adequately explain the bases of their conclusions. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1995); see also Molina, 674 F.3d at 1111-12. In this case, the problem was not that conclusions were checked off without explanation, but that no specific limitations were checked off, or where they were, the checkboxes were qualified by a notation of "variable" without further explanation. See, AR 452. Moreover, the doctors' usages of the term "variable," without explanation, were insufficiently specific. As in Crane and Molina, the forms failed to provide necessary information. Their incompleteness constitutes another specific and legitimate reason for giving little weight to the opinions of Dr. Au and Dr. Priest.

    ii. Amy Loarie, Psy. D., Consultative Examiner

As recounted above, the ALJ gave "little weight" to the opinion of Dr. Loarie and "great weight" to the contrary opinions of the state agency consultants regarding plaintiff's mental limitations. AR 26-27. The ALJ's stated reasons for discounting Dr. Loarie's opinion were that (1) the opinion was "inconsistent with the positive objective findings noted during her examination of the claimant" and (2) diagnostic testing reflected mild neurocognitive disorder. AR 27.

Specifically, the ALJ pointed to Dr. Loarie's findings that plaintiff had normal motor activity, good eye contact, average intelligence, normal concentration, an adequate fund of knowledge, intact judgment, good insight, and intact through process. AR 27, 454-58. Internal inconsistency is a legitimate basis for discounting a medical opinion. Rollins v. Massanari, 261

F.3d 853, 856 (9th Cir. 2009). The ALJ also specifically referenced diagnostic testing performed by provider Dr. Kimberley Rose, which revealed only mild neurocognitive disorder. AR 27, 487. Inconsistency with other medical evidence is also a legitimate basis for discounting a medical opinion. Magallanes, 881 F.2d at 751-54. By specifying the conflicting clinical evidence, stating his interpretation, and making findings, the ALJ satisfied the applicable standards. The court finds no error.

### B. The ALJ's Did Not Err in Evaluating Plaintiff's Testimony

Plaintiff testified that the symptoms of his multiple sclerosis, including pain, fatigue, and "brain fog," were so severe that he could not maintain employment. The ALJ reviewed this testimony, and the Function Report that plaintiff had completed, and concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [his]symptoms are not entirely consistent with the medical evidence and other evidence in the record. . ." AR 24. Accordingly, he did not fully credit plaintiff's testimony. Id.

Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. ... In this analysis, the claimant is not required to show that [his or her] impairment could reasonably be expected to cause the severity of the symptom she has alleged; [he or she] need only show that it could reasonably have caused some degree of the symptom." Garrison, 759 F.3d at 1014 (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. (internal citations omitted).

However, the ALJ "must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints." Id. (internal citations omitted). While an ALJ's credibility finding must be properly supported and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may

11

not engage in second-guessing." Thomas, 278 F.3d at 958.

Here, the ALJ noted plaintiff's report that he could perform "personal grooming activities, prepared meals, perform household chores, go places alone, drive a vehicle, and shop." The ALJ concluded that plaintiff's "ability to participate in such activities undermines the claimant's allegations of disabling functional limitations." AR 24. The ALJ is permitted to consider plaintiff's activities of daily living in making a disability determination. 20 C.F.R. § 404.1529; see also, Rollins, 261 F.3d at 857. The ALJ appropriately concluded that plaintiff's actives of daily living, as stated above, are inconsistent with claims of totally disabling pain. See AR 23.

The ALJ also pointed to plaintiff's history of being noncompliant with his prescription of Copaxone injections. AR 23, 499. The ALJ noted further that plaintiff's anxiety was controlled with medication, his baseline functioning was estimated to be in the high average range, his global measure of cognitive functioning was within normal limits, and his syndrome was noted as being consistent with a mild neurocognitive disorder. AR 23, 444, 480-84. The ALJ's reliance on plaintiff's history of normal or mild neurological findings (AR 468-69, 472-73, 498-99, 501, 506, 510-11, 520) and exhibition of normal mental status in October 2014, February 2015 and September 2015 (AR 444, 456-57, 483-86), was an appropriate additional basis to find plaintiff less credible. Burch, 400 F.3d at 681 (lack of objective medical evidence can be a factor, in conjunction with other factors, for discrediting plaintiff). Finally, the ALJ found that plaintiff's course of treatment did not support his testimony. AR 23. "Conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007).

For these reasons, the court finds no error.

C. The ALJ Properly Discounted Ms. Daly's Lay Witness Statements

Plaintiff presented a Third Party Function Report completed by his mother, Cheryl Daly. AR 295-303. The ALJ considered this report, and declined to credit it regarding the severity of plaintiff's symptoms. AR 24.[4]

---

[4] Plaintiff challenges the ALJ's evaluation of Ms. Daly's statement as part of his argument (continued…)

12

As a general matter, the ALJ may discount the testimony of lay witnesses only if he or she provides specific "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); accord Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

It was not proper of the ALJ to discount Ms. Daily's report on grounds that "she is not a doctor" and "she is not competent to make a diagnosis or argue severity of the [plaintiff's] symptoms." AR 24. Lay witness testimony is pertinent for different reasons than medical professional testimony. The Ninth Circuit has held that "family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his] condition." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)." Id. At most, however, this was harmless error. See Molina, 674 F.3d at 1117 (harmless error to reject lay witness testimony that "does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony").

The ALJ gave a second, germane and thus fully adequate reason for discounting Ms. Daly's account of plaintiff's symptoms: "The level of daily activity described by the claimant's mother is inconsistent with a finding of disability." AR 24. Adverse credibility determinations regarding symptom severity may be based on inconsistency with activities of daily living. Fair, 885 F.2d at 603. Moreover, where lay testimony lay testimony describes the same limitations as plaintiff's testimony, the ALJ's reasons for rejecting plaintiff's testimony will apply with the same

////

---

regarding plaintiff's own testimonial credibility. AR 18 at 19. For the reasons explained above, the court finds no error whether the Third Party Report is considered in the context of plaintiff's credibility or separately.

13

force to the lay testimony. <u>Molina</u>, 674 F.3d at 1122. That is the case here. The court finds no error.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19), is GRANTED; and

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: February 13, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE